UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
LAWRENCE PLANT                    )
                                  )
    v.                            )    CIVIL NO. 02-04-10036-PBS
                                  )
UNITED STATES OF AMERICA          )
                                  )

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S
MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. §2255**

The United States of America, by United States Attorney Michael J. Sullivan and Assistant United States Attorney James Lang, submits this memorandum in response to the petitioner Lawrence Plant's Motion to Correct Sentence Under 28 U.S.C. §2255 ("Hab. Pet.").

**PROCEDURAL BACKGROUND**

On December 5, 2001, a grand jury returned an indictment against the petitioner, charging him with three counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). On October 9, 2002, the petitioner pled guilty to all three counts. The Presentence Report ("PSR") determined that he qualified as a career offender under U.S.S.G. § 4B1.1 by virtue of the two prior convictions described in ¶¶ 89 (possession of heroin with intent to distribute) and 92 (breaking and entering in the nighttime with intent to commit a felony). [PSR ¶¶ 58, 104]. The PSR therefore assigned an offense level of 32, from which it subtracted three levels for acceptance of responsibility, and a

criminal history category ("CHC") of VI, yielding a guidelines sentencing range ("GSR") of 151 to 188 months.[1]  [PSR ¶¶ 59, 60 102, 104, 192].

On March 20, 2003 the Court, adopting the PSR's calculations and determination of the applicable GSR, sentenced the petitioner to a term of incarceration of 151 months.  Thereafter, the petitioner successfully moved in Plymouth District Court to vacate the breaking and entering career offender predicate and that charge was subsequently dismissed by the Commonwealth of Massachusetts. [Hab. Pet. 1-2].  On January 6, 2004, he filed the instant habeas petition.

## ARGUMENT

I. **THE COURT SHOULD DENY THE §2255 PETITION BECAUSE A DEFENDANT MAY NOT COLLATERALLY ATTACK A GUIDELINES SENTENCE BASED ON THE POST-SENTENCING VACATUR OF A CONVICTION THAT WAS USED TO CALCULATE HIS CRIMINAL HISTORY CATEGORY.**

The petitioner asserts that, having procured the vacatur of one of his two career offender predicate convictions, he is entitled to be resentenced within the GSR that would otherwise have applied, i.e., 84-105 months.  [Hab. Pet. 2].  In support of that assertion, he cites United States v. Pettiford, 101 F.3d 1999 (1st Cir.), and United States v. Brackett, 270 F.3d 60 (1st Cir. 2001), for the proposition that a prisoner who has

---

[1] The PSR determined that, were the petitioner not a career offender, his total offense level would have been 22 and his CHC would still have been VI, yielding a GSR of 84-105 months. [PSR ¶¶ 42-57, 101-102].

2

successfully vacated predicate convictions under either the Armed Career Criminal Act ("the ACCA"), 18 U.S.C. §924(c), or the career offender provision of the United States Sentencing Guidelines, U.S.S.G. §4B1.1, has a cognizable claim for resentencing under §2255. [Hab. Pet. 2]. In neither case, however, did the First Circuit hold that a guidelines sentencing claim comes within the ambit of §2255.

In 1994, in Custis v. United States, 511 U.S. 485 (1994), the Supreme Court considered whether a defendant being sentenced under the ACCA could attack, at the time of his federal sentencing, the validity of a prior conviction used to enhance his sentence. The Court found that, with the sole exception of a conviction obtained in violation of the right to counsel, a defendant has no such right. The Court based its decision on the plain language of the ACCA, which, unlike other enhancement statutes, does not permit repeat offenders to challenge prior convictions; the enormous litigative burden that would be imposed on federal district courts if they were required to review the constitutionality of prior convictions; and society's interest in promoting the finality of judgments. 511 U.S. at 491-197. In closing, the Court noted that ACCA defendants might attempt to attack their predicate convictions in state court or through federal habeas review and, if successful, might apply for reopening of any federal sentence enhanced by the state

sentences. The Court, however, "express[ed] no opinion on the appropriate disposition of such an application." 511 U.S. at 497.

Defendants read Custis's simple assertion regarding the limits of its holding as a prescription for reducing their federal sentences. Courts followed suit. Thus, in United States v. Doe, 239 F.3d 473, 475 (2nd Cir. 2001); United States v. LaValle, 175 F.3d 1106, 1108 (9th Cir. 1999); United States v. Walker, 198 F.3d 811, 813-814 (11th Cir. 1999); Turner v. United States, 183 F.3d 474, 476 (6th Cir. 1999), cert. denied, 528 U.S. 1195 (2000); United States v. Bacon, 94 F.3d 158, 162, n.3 (4th Cir. 1996)(dicta); United States v. Cox, 83 F.3d 336, 339 (10th Cir. 1996); United States v. Rogers, 45 F.3d 1141, 1143 (7th Cir. 1995)(dicta); United States v. Garcia, 42 F.3d 573, 581 (10th Cir. 1994)(dicta); and United States v. Nichols, 30 F.3d 35, 36 (5th Cir. 1994), appellate courts held or noted in dicta that when a court sets aside an ACCA predicate conviction, or a conviction used in calculating a defendant's CHC, the defendant may seek, and obtain, resentencing under 28 U.S.C. §2255. With little exception, these cases provide scant support for their decisions – often relying on the existence of prior cases that also provided little analysis or on Nichols, where the government had conceded that the defendant should be resentenced. Noticeably lacking from the case law is any analysis of how a

4

defendant's claim fits into long-standing principles developed under §2255 - those principles that confine §2255 claims to those which allege constitutional or jurisdictional errors or errors that otherwise present "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994); *see also* United States v. Addonizio, 442 U.S. 178, 185 (1979)("unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack [is limited to] a fundamental defect which inherently results in a complete miscarriage of justice")(internal quotation marks and citation omitted); United States v. Timmreck, 441 U.S. 780, 783-784 (1979); Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962); *and see* David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)("the catch-all fourth category includes only assignments of error that reveal fundamental defects which...result in a complete miscarriage of justice")(internal quotation marks and citation omitted).²

---

²In Mateo v. United States, 310 F.3d 39 (1st Cir. 2002) ("Mateo II"), the First Circuit said the following with respect to §2255:
    Admittedly, this language has been construed somewhat less generously than the words alone might suggest. The reference to "laws" and "otherwise subject to collateral attack" might at first seem to encompass any non-constitutional legal error, but the Supreme Court has limited claims of legal error- where neithera constitutional nor a jurisdictional claim is

5

The First Circuit, however, did touch on these issues in its subsequent decision in <u>Pettiford</u>, 101 F.3d at 199. After receiving an ACCA sentence, Pettiford managed to get eight of nine Massachusetts state convictions vacated and thereafter successfully filed a §2255 petition to reduce his sentence. Pettiford's motions to vacate the state convictions "were based on the ground that he had not been furnished by the courts, before accepting his guilty pleas, the information necessary for his pleas to be considered voluntary." 101 F.3d at 201-202. "For the Boston Municipal Court cases there were no records, presumably because more than two and one-half years had elapsed since the plea and they had been destroyed pursuant to permissive Rule 211A(4). In the Dorchester Court there were tapes but they were unintelligible. One court demonstrably, and the other court apparently, applied the Massachusetts rule that the burden is on the state to show the voluntariness of the plea . . . and granted the motions to vacate." 101 F.3d at 202. On the government's appeal, the First Circuit Court affirmed the resentencing. It found that, with respect to ACCA sentences, "Congress chose to

---

> presented- to alleged errors that present "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." We ourselves have held that "a guideline violation alone is not automatically a basis for relief" in a section 2255 proceeding.

310 F.3d at 41-41 (citations omitted).

6

predicate sentence enhancement on state action." Relying on language in 18 U.S.C. §921(a)(20)(pre-1998 amendment), the court found that "it is not for the federal court to read the statutory language, 'in accordance with the law of the jurisdiction in which the proceedings were held' as permitting us to conclude that Massachusetts lower court decisions were wrongly decided." 101 F.3d at 202. In the court's view, Pettiford's claim was cognizable under §2255, even though his ACCA sentence was correctly imposed, because the plain language of the ACCA discounts convictions that are set aside by state action; the sentence therefore ran afoul of the ACCA, subjecting it to collateral attack within the meaning of §2255.[3] Pettiford, 101 F.3d at 201 (relying on fourth prong of §2255).

Thus, Pettiford did not address the central issue raised in

---

[3]Section 2255 provides in pertinent part:
> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The first three categories are inapplicable to a defendant seeking resentencing based on the fact that an enhancing conviction on which the sentencing court relied was later set aside. Each of those categories speaks of a sentence that was imposed incorrectly at the time of sentencing. The fourth clause does not have this limitation; still, to be cognizable under §2255, a petitioner's claim must, as discussed in the text, establish a fundamental defect resulting in a miscarriage of justice that requires extraordinary relief.

7

the instant case: whether a defendant may seek resentencing under §2255 when a conviction used to calculate his CHC has been set aside. In the subsequent First Circuit case, <u>Brackett</u>, the government argued that there is no such entitlement. In affirming the district court's dismissal of the habeas petition on the ground that it was not timely filed, however, the First Circuit did not reach that issue. 270 F.3d at 64 n.1. It noted that the government's substantive argument was not advanced below because the district court ruled without providing the government an opportunity to respond; the issue of the cognizability of Brackett's resentencing claim was therefore outside of the scope of the certificate of appealability.[4] <u>Id</u>.

As set forth below, the government believes that a proper

---

[4]To be sure, the First Circuit in <u>Brackett</u> expressed some skepticism about the validity of the government substantive argument. 270 F.3d at 64 n.1. But it expressly stated: "We do not decide this issue." <u>Id</u>. Likewise, in <u>Mateo II</u>. There the First Circuit remanded a §2255 petition to this Court for consideration, *inter alia*, of whether the defendant's claim that he was entitled to be resentenced because his CHC had changed by virtue of a post-conviction *nunc pro tunc* termination of a probationary warrant, was cognizable under §2255. 310 F.3d at 40, 42. In so doing, it stated:

> If there was an error at all, a further sentencing question is whether such "error" is cognizable in a section 2255 proceeding. In our circuit, our decision in <u>United States v. Pettiford</u> (*see also* <u>Brackett v. United States</u>) might be taken to have answered, helpfully to Mateo, the question left open by the Supreme Court in <u>Daniels v. United Stated</u>. However, the limitations imposed by <u>Hill</u> and <u>Knight</u> arguably remain.

<u>Id</u>. at 42 (citations omitted).

application of the principles of habeas jurisprudence compels the conclusion that a defendant may not use §2255 to lower a guidelines sentence simply because a prior conviction on which his CHC has been calculated has been set aside.[5]

### 1. Collateral relief under §2255 is extraordinary and is limited to constitutional or jurisdictional errors or errors amounting to a miscarriage of justice.

Recognizing that §2255 is limited to constitutional or jurisdictional errors, and those errors of law presenting exceptional circumstances which uncorrected would cause a complete miscarriage of justice, the First Circuit in Knight limited the use of §2255 to correct, at most, sentencing guideline errors arising from a constitutional violation that occurred at sentencing (such as ineffective assistance of counsel) and those errors that constitute a complete miscarriage of justice. 37 F.3d at 773 ("While we do not hold that an error in the application of the sentencing guidelines could never constitute a 'complete miscarriage of justice,' Knight's claims here do not meet that standard.").[6] The petitioner was correctly

---

[5] The government recognizes that this Court's decision following remand from the First Circuit in Mateo II construed such a claim to be cognizable under §2255. 276 F.Supp.2d 186, 194-195 (D. Mass. 2003).

[6] See also United States v. Pregent, 190 F.3d 279, 283-284 (4th Cir. 1999)("Barring extraordinary circumstances...an error in the application of the Sentencing Guidelines cannot be raised in a §2255 proceeding."); Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998), cert. denied, 526 U.S. 1145 (1999)("a claim that the sentence imposed is contrary to a subsequently-enacted clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a

9

sentenced as a career offender under the sentencing guidelines, and his claim concerning his continued status as a career offender simply does not meet standard for §2255 relief discussed in <u>Knight</u>.

> **a.   There is nothing in the guidelines themselves that prohibits the petitioner's career offender status.**

The career offender provision directs a sentencing court to determine whether the defendant had qualifying convictions at the time he committed the offense of conviction, U.S.S.G. §4B1.2(c), and the guidelines establish rules for what convictions, in place

---

complete miscarriage of justice"); <u>United States v. McMullen</u>, 98 F.3d 1155, 1157 (9th Cir. 1996)(§2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding"); <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2nd Cir. 1996)(absent complete miscarriage of justice, sentencing guidelines claims will not be considered on a §2255 motion where defendant failed to raise them on appeal); <u>Grant v. United States</u>, 72 F.3d 503, 505-506 (6th Cir. 1996)(petitioner's "relevant conduct" claim was not "so positively outrageous as to indicate a 'complete miscarriage of justice'" warranting §2255 relief); <u>Auman v. United States</u>, 67 F.3d 157, 161 (8th Cir. 1995)("we reserve judgment on whether violation of the guidelines could ever be cognizable under section 2255 [and] hold that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim."); <u>Scott v. United States</u>, 997 F.2d 340, 341-42 (7th Cir. 1993)("If denials of allocution and improper colloquies in taking guilty pleas do not cause miscarriages of justice, it is hard to see how deviation from the Sentencing Guidelines could do so"; "only extraordinary circumstances...even call for an inquiry"); <u>United States v. Perez</u>, 952 F.2d 908, 909-10 (5th Cir. 1992)(defendant's claims that he was entitled to acceptance-of-responsibility and role adjustments do not constitute grounds for §2255 relief).

Although some of these cases refer to the petitioner's procedural default, sentencing guidelines claims that could not have been raised on appeal must still meet the "fundamental defect" standard to warrant §2255 relief. As the Supreme Court explained in <u>Stone v. Powell</u>, 428 U.S. 465, 478, n.10 (1976), "[e]ven those nonconstitutional claims that could not have been asserted on direct appeal can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." (Internal quotations and citation omitted).

10

or set aside at the time of sentencing, may be considered. See §§4A1.2, comment. (n.6), and 4A1.2, comment (n.10).[7] The guidelines also permit retroactive adjustment of sentences based on certain post-sentencing events. See §1B1.10. Still, despite the guidelines' recognition that convictions are set aside, and its recognition that some post-sentence events should require resentencing, nothing in the guidelines suggests that a career offender sentence that was valid at the time it was entered is rendered unlawful under the guidelines by subsequent invalidation of the predicate convictions.[8] In comparison, 18 U.S.C. §3559(c)(7)(the "three-strikes" statute), specifically authorizes the resentencing of a "three-strikes" defendant when a predicate conviction has been set aside for specified reasons. The Commission's decision not to provide a similar mechanism for resentencing when a prior conviction upon which a defendant's CHC was based is set aside should be dispositive. Custis, 511 U.S.

---

[7] The guidelines address the possibility that a defendant may, at the time of sentencing, have some convictions that have been set aside. Thus, a sentencing court may not use convictions that have been reversed or vacated "because of errors of law or because of subsequently discovered evidence exonerating the defendant, or [those that] have been ruled constitutionally invalid in a prior case." §4A1.2, comment. (n.6). And, §4A1.2, comment (n.10), provides that a sentencing court must count sentences resulting from convictions that have been set aside "for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction." The guidelines mandate that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score." U.S.S.G. §4A1.2, comment. (backg'd.).

[8] In particular, the events set out in §1B1.10 that require retroactive adjustment of a defendant's sentence do not include the vacation of a prior conviction.

11

at 492 ("The language of [§3559(c)(7)] shows that when Congress intended to authorize a defendant who has successfully attacked a predicate conviction to be resentenced in federal court, "it knew how to do so."); *cf.* United States v. Luna Diaz, 22 F.3d 1, 5 (1st Cir. 2000)(referring to Commission's ability to state its position unambiguously when analyzing another guideline). Nothing, then, in the guidelines makes Brackett's continued status as a career offender unlawful.

### b. The Constitution does not prohibit the petitioner's career offender status.

Any constitutional violation resulting from the use of a predicate conviction that has been set aside would presumably be under the due process clause. But the mere fact that a prior conviction has been set aside does not mean that the due process clause prohibits its use to enhance a defendant's sentence. Custis itself recognizes this. The Custis Court expressly held that a defendant may not assert at the time of sentencing a general due process right to be free from an enhanced sentence based on a prior conviction that is in fact constitutionally invalid. 511 U.S. at 497 (if, by the time of sentencing under the ACCA, a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence). The Court found no compelling reason to recognize Custis's claims that his prior convictions resulted from ineffective assistance of counsel,

inadequate plea colloquies, and unknowing pleas. Rather, it found that these alleged constitutional violations were not the kind of "unique constitutional violation" presented by deprivation of counsel that warranted consideration at sentencing. See also United States v. Tucker, 404 U.S. 443, 447 (1972)(sentence based on uncounseled felony conviction is a sentence based upon "misinformation of constitutional magnitude"). If there is no general due process right not to be sentenced based on a flawed conviction, there should equally be no general due process right to relief from a sentence that is based in part on a conviction that was valid at the time the defendant was sentenced but later set aside.[9] The Supreme Court's Daniels decision compels this conclusion. In holding that a federal defendant cannot use §2255 to attack an enhancing conviction that can no longer be attacked in the state court system, the Court affirmed the constitutionality and general acceptability of a defendant's continued sentence based in part on an invalid prior conviction. The Court noted that when "a due process claim is predicated on the consideration at sentencing of

---

[9]In Johnson v. Mississippi, 486 U.S. 578, 584-585 (1988), the Supreme Court held that the eighth amendment prohibits a death sentence that is based in part on a reversed conviction. The possibility of a death sentence is, like the possibility that a defendant will be sentenced based on a completely uncounseled prior conviction, a unique or special circumstance. Johnson, 486 U.S. at 584 (there is "special need for reliability in the determination that death is the appropriate punishment"); Custis, 511 U.S. at 496 (denial of right to counsel is a "unique constitutional defect").

13

a fully expired prior conviction, we think the goals of easy administration and finality have ample 'horsepower' to justify foreclosing relief under §2255." 121 S.Ct. at 1584.

Rejection of the petitioner's claim is also consistent with the "traditional understanding of the sentencing process," which is less exacting than the process of establishing guilt. Nichols v. United States, 511 U.S. 738, 747 (1994)(since defendant charged with misdemeanor has no constitutional right to counsel, sentencing court may consider uncounseled misdemeanor in calculating a defendant's CHC). In fashioning a sentence, courts are free to consider a wide variety of factors, and, consistent with due process, may consider evidence of criminal behavior that does not result in a conviction. Nichols, 511 U.S. at 748; United States v. Watts, 519 U.S. 148, 157 (1997) (*per curiam*)(without offending due process, sentencing court may consider acquitted conduct); *see also* 18 U.S.C. §3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence") *and* U.S.S.G. §1B1.4 (similar). Perhaps more important, although evidence considered at sentencing must be reliable, U.S.S.G. §6A1.3, there is no constitutional right to be resentenced in a collateral proceeding if it turns out that a sentencing court relied in part on

14

misinformation. <u>Addonizio</u>, 442 U.S. at 190 ("subsequent actions taken by Parole Commission – whether or not such actions accord with a trial judge's expectations at the time of sentencing – do not retroactively affect the validity of the judgment itself.").[10] Of course, the mere fact that a conviction has been set aside does not establish that the conviction is (or was at the time of sentencing) an unreliable indicator of the defendant's prior criminal conduct.[11] Nor does a set aside that

---

[10] <i>Cf.</i> <u>Burke</u>, 152 F.3d at 1332 (defendant's claim that his offense level resulted from an erroneous obstruction enhancement was not cognizable under §2255, even though post-sentencing clarifying amendment established that enhancement was an error), and <u>Auman</u>, 67 F.3d at 120-121 (court's erroneous classification of a prior conviction as a violent felony was not a miscarriage of justice even though defendant was sentenced as a career offender).

[11] Stale convictions are set aside for many reasons – the lack of adequate records to contest a defendant's claim of unconstitutionality, a state's lack of resources or incentive to contest stale convictions, antipathy to the federal sentencing guidelines, and so forth. None of these factors casts doubt on the efficacy of the conviction as a basis for determining an appropriate sentence. <i>Cf.</i> <u>United States v. Roberts</u>, 39 F.3d 10 (1st Cir. 1994)(discussing need for an assurance that the defendant had admitted to a crime, rather than particular formalities, when determining if a "continuance without a finding" may be counted under §4A1.1.). Indeed, a fair proportion of Massachusetts state-court convictions are set aside for reasons that have little to do with the reliability of the conviction as an indicator of the defendant's guilt. Rule 211(A)(4) of the Special Rules of the District Courts of Massachusetts, for example, provides for the routine preservation of tape-recordings of district courts proceedings for only two and one-half years, and defendants have obtained set asides merely because of the absence of these records. <u>LaValle</u>, 175 F.3d at 1107 (defendant's 1986 Massachusetts conviction set aside in 1996 upon defendant's motion alleging, <i>inter alia</i>, that he had not been advised of his constitutional rights); <u>Pettiford</u> (eight Massachusetts convictions set aside based on state's inability to show that defendant had received adequate <u>Boykin</u> colloquies); <u>United States v. Payne</u>, 894 F.Supp. 534, 537, n.7 (D. Mass. 1995)(noting that Massachusetts convictions may be set aside because records of the plea colloquies are routinely destroyed). <i>See also</i> <u>Gonzalez</u>, 135 F.Supp.2d at 116 (Gonzalez's Massachusetts conviction set aside because he had not received required notice that his plea could result in deportation).

15

casts doubt on the reliability of the prior conviction suggest that a continued enhanced sentence is fundamentally unfair. "A defendant who commits a new crime after creating a prior criminal record has fair warning that the record may haunt him or her in sentencing, absent quite extraordinary circumstances," Roberts, 39 F.3d at 12, and has had many opportunities prior to the new crime to contest the prior conviction and thus avoid treatment as a recidivist. See also Daniels, 121 S.Ct. at 1583, n. 1 ("If a person chooses not to pursue...remedies [to challenge the constitutionality of prior convictions], he does so with the knowledge that the conviction will stay on his record. This knowledge should serve as an incentive not to commit a subsequent crime and risk having the sentence for that crime enhanced under a recidivist sentencing statute."); Mateo II, 310 F.3d at 42 ("the government could argue— though we express no view as to the merits of such an argument— that one who commits a new offense while under sentence for an older one deserves a higher sentence even if the former conviction is later set aside"); cf. Lewis v. United States, 445 U.S. 55, 64 (1980)(person prosecuted for being a felon in possession of a firearm cannot collaterally attack his previous conviction at trial because "before obtaining his firearm [he] could have challenged his prior conviction in an

---

Here too there is nothing in the record in the §2255 proceeding, or in the associated criminal case, that suggests that the petitioner's conviction was an unreliable indicator that he in fact committed the crime to which he pleaded guilty.

16

appropriate [state] proceeding.").

The reason for limiting the grounds for collateral relief as described here is basic to our system of justice. Allowing a defendant to collaterally attack a guidelines sentence based on the vacatur of a prior conviction undermines, in two separate court systems, an important societal goal - finality. Calderon v. Thompson, 523 U.S. 538, 555-556 (1998)("Finality is essential to both the retributive and deterrent functions of criminal law"; it "serves as well to preserve the federal balance"; and "[o]nly with an assurance of real finality can the State execute its moral judgment in a case. Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out."); Teague v. Lane, 489 U.S. 288, 309 (1989)("Without finality, the criminal law is deprived of much of its deterrent effect"); Addonizio, 442 U.S. at 184, n. 11 ("Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures."). Defendants who have genuine qualms about their guilty pleas may challenge them before they commit another crime.[12] There is thus no good reason to undermine the important

---

[12] It is noteworthy that the conviction that was set aside flowed from a guilty plea more than three years earlier, rather than from a contested trial that was followed by an appeal and the creation of a detailed record (i.e., the production of transcripts). The set aside of this guilty plea, and the concomitant set aside of the federal sentence on which was based in part on the state conviction, is especially ironic. "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." Bousley v. United States, 523 U.S. 614, 621, 621 (1998)(quotation marks and citation omitted).

17

principle of finality.

As a policy matter, too, recognition of a federal right to attack a guidelines sentence based upon the set aside of an enhancing conviction for a reason other than lack of counsel has the undesirable effect of encouraging state courts to vacate their convictions solely to circumvent the federal sentencing guidelines. In this case, for example, it is evident that the sole reason the petitioner sought to have his state court plea set aside is its role in enhancing his federal sentence - not because there was anything unjust about it. Troubling too is the disparity that will result from recognition of such a right (the right to have a guidelines sentence reduced when a predicate conviction has been set aside for any reason); given the apparent willingness of state courts to set aside old convictions, defendants whose CHCs are based on state convictions have a far better chance of obtaining a reduced sentence than defendants whose CHCs are based on federal convictions. And given the fact that convictions are set aside for a host of reasons unrelated to constitutional concerns, it cannot be said that there is a federal need to discount those convictions to avoid erosion of important constitutional principles. *Contrast* <u>Burgett v. Texas</u>, 389 U.S. 109, 115 (1967) ("To permit a conviction obtained in violation of <u>Gideon v. Wainwright</u> to be used against a person either to support guilt or enhance punishment for another

offense...is to erode the principle of that case.").

### c. **Pettiford does not require a different result**.

As noted earlier, Pettiford involved a matter of statutory interpretation. Important, too, is that in Pettiford, the enhancing convictions had the effect of changing the statutory maximum for the offense of conviction - from 10 years to life imprisonment. Pettiford's sentence was thus in excess of the correct statutory maximum (a "miscarriage of justice").[13] The petitioner, on the other hand, received a guideline sentence within the statutory maximums for his offenses. Moreover, the Supreme Court has recognized that special precautions are prudent when the statutory maximum of a crime depends upon a particular factor. Cf. Apprendi v. New Jersey, 530 U.S. 466 (2000). Factors that impact where a court should sentence a defendant within a prescribed statutory maximum do not warrant such special precautions. United States v. Cabo, 248 F.3d 98, 101 (1st Cir. 2001)(Apprendi does not apply to guideline findings). At bottom, the petitioner's claim is simply a claim that the guidelines were misapplied. It should not be cognizable in a §2255 petition.

### CONCLUSION

For the foregoing reasons, the § 2255 petition should be

---

[13] The sentence, when imposed, was within the statutory maximum and thus the third prong of §2255 ("the sentence was in excess of the maximum authorized by law") was inapplicable; the Pettiford Court relied instead on the fourth prong - "is otherwise subject to collateral attack," that prong which requires a showing of a miscarriage of justice.

19

dismissed.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                    By: _____
                          JAMES LANG
                          Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

Suffolk, ss.                          Boston, Massachusetts
                                      February 3, 2004

    I, James F. Lang, Assistant U.S. Attorney, do hereby certify that I have served by first class mail, postage prepaid, a copy of the foregoing upon Miriam Conrad, Esq., 408 Atlantic Avenue, Boston, MA 02210.

                                      _____
                                      JAMES LANG
                                      Assistant U.S. Attorney